IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JOE BIDWELL, § | | |
| Plaintiff, § | | |
| v. § | | CIVIL ACTION NO. 4:20-CV-00860-ALM-CAN |
| § | | |
| COMMISSIONER, SSA, § | | |
| § | | |
| Defendant. § | | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits. Plaintiff raises a single issue on appeal. Plaintiff argues substantial evidence does not support the ALJ's reasoning for not applying a higher age category to Plaintiff [Dkt. 16 at 1], urging that applying the higher age category would have led to a determination that he was entitled to DIB benefits [Dkt. 16 at 14]. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends the Commissioner's decision be **AFFIRMED.**

**RELEVANT PROCEDURAL BACKGROUND**

This case has lengthy procedural history dating back nearly thirteen years. On November 20, 2009, Plaintiff Joe Bidwell ("Plaintiff") filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging an onset of disability date of July 5, 2009 [TR 216-219]. Plaintiff's claim was initially denied on March 2, 2010, and again on upon reconsideration on May 6, 2010 [TR 137-138]. Subsequently, Plaintiff underwent four administrative hearings and received multiple ALJ Decisions, culminating in the instant appeal, as outlined *infra*.

*April 2014 ALJ Decision*

After a hearing on Plaintiff's applications in 2010, on June 28, 2011, the ALJ issued an initial unfavorable decision [TR 198-215]. Plaintiff requested review by the Appeals Council, and on September 19, 2012, the Appeals Council remanded the case back to the ALJ [TR 216-218]. A second hearing was held on June 18, 2013. [TR 93-133]. On April 9, 2014, the ALJ issued a further unfavorable decision at step five of the analysis; finding Plaintiff was not entitled to either DIB or SSI [TR 1083]. Plaintiff appealed the April 2014 ALJ Decision [TR 1076-1093]. *Bidwell v. Comm'r, SSA*, No. 4:15-cv-00791-ALM-KPJ, ECF No. 1 (E.D. Tex. Nov. 13, 2015). United States Magistrate Judge Kimberly Priest-Johnson recommended remand, specifically directing the ALJ consider the "closely approaching advanced age" category and explain his reasoning because the case presented a "borderline age situation" [TR 1088].[1] More specifically, the Magistrate Judge found:

> Thus, under Plaintiff's circumstances, the Court finds Plaintiff was in a borderline situation at the time of the ALJ's decision. Therefore, although the ALJ may not have been required to apply the older age category, the Court finds that the ALJ was required to at least consider whether such application would be more appropriate.
>
> ….
>
> Such references to Plaintiff's age, in combination with the ALJ's lack of explanation when classifying Plaintiff, are insufficient to demonstrate the ALJ recognized or considered Plaintiff's borderline age situation as required by the regulations. Thus, there is no evidence in the record the ALJ did so, and a remand is proper on this issue.

---

[1] The Court notes that the findings of the undersigned do not conflict with Judge Johnson's prior Report and Recommendation in *Bidwell v. Comm'r, SSA*, No. 4:15-cv-00791-ALM-KPJ. Distinct between the case before the undersigned and the case before Judge Johnson is the partial favorability of the October 2019 ALJ decision. The April 2014 ALJ Decision was wholly unfavorable to Plaintiff. For reasons explained *infra*, this distinction is crucial to the Court's recommendation.

[TR 108-1090]. *Bidwell*, No. 4:15-cv-00791-ALM-KPJ, ECF No. 22 at 11-13. United States District Judge Amos Mazzant adopted the Magistrate Judge's findings, and the case was remanded to the Commissioner [TR 1076-1077]. *Bidwell*, No. 4:15-cv-00791-ALM-KPJ, ECF No. 23.

*August 2018 ALJ Decision*

Upon remand, a third hearing was held on April 30, 2018 [TR 1040-1055, 1076-1093]. After the third hearing, ALJ Thomas John Wheeler ("ALJ Wheeler") issued a partially favorable decision denying Plaintiff's application for DIB but finding he was disabled and entitled to benefits for SSI [TR 1101-1123]. ALJ Wheeler found that Plaintiff had the following severe impairments: coronary artery disease with effects from multiple heart attacks, atrial fibrillation, hypertension, obesity, chronic obstructive pulmonary disease, and major depressive disorder [TR 1109]. At step three, ALJ found Plaintiff had the following residual functioning capacity ("RFC"); notably, he excluded any psychologically-based limitations in his RFC finding:

> since July 5, 2009, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with the following limitations:
> - The claimant is able to lift or carry 10 pounds on an occasional basis.
> - The claimant is able to lift or carry less than 10 pounds, on a frequent basis.
> - The claimant can walk or stand for two hours of an eight-hour workday.
> - The claimant can sit for six hours or an eight-hour workday.
> - The claimant has no limitations on pushing and pulling, within the above exertional ranges.

[TR 1109]. In determining the RFC, ALJ Wheeler specifically analyzed the borderline age situation as follows:

> **GRID RULE BORDERLINE PERIOD:**
> The claimant's representative argued the claimant should be found disabled, under GRID rule 201.14, going back six months prior to the claimant turning age 50. This is the borderline period. I asked her to make a legal argument for that outcome. She stated the claimant received a pace-maker in December of 2011, but continued to have problems with atrial fibrillation and tachycardia.

The previous Decision and this current Decision both found the claimant capable of work at the sedentary level beginning from the alleged onset date of July 5, 2009, and up through the date of each Decision. Those findings are not at issue. What is at issue is the borderline period, running from six months prior to the claimant's 50th birthday on up to the day before the actual birthday date, i.e., up to June 16, 2014. So, from December 16, 2013 up to June 16, 2014. The open issue is whether or not the claimant should be deemed disabled during this borderline period.

The representative also argued, "You don't just turn 50 and become disabled right then." But I find that under GRID rule 201.14, you do just turn 50 and are deemed disabled right then (actually, the day before turning age 50). The GRID rule is a bright line for someone capable of only sedentary work. It is the borderline age period that does not automatically render an individual disabled.

I considered the representatives arguments as to why an application of the borderline period would be more appropriate than a mechanical application of the bright line GRID rule. Those arguments are essentially: 1. The claimant received a pacemaker over two years prior to the borderline period, which helped improve some of his symptoms, but not all of them. The second argument appears to be: 2. The claimant's condition during the borderline period was not significantly different than his condition at age 50. The third argument is: 3. Dr. Kidwai found the claimant disabled going back to 2011. (Exhibit 14F).

1. I find that the claimant's pacemaker was an improvement that mitigated some of his symptoms. It did not improve all of his symptoms. Contrary to the representative's assertion, the claimant's records suggest his fibrillations are under control and have been since his ablation surgery. (Exhibit 4F/l). However, even with his remaining symptoms, he was still able to perform some work at the sedentary level of exertion. He was able to perform sedentary work even before having a pacemaker implanted.

2. As to the second argument, I find that applying the GRID rule to the borderline period is not based merely on a consideration of whether or not a claimant's condition during the borderline period was the same or worse than his condition after the borderline period. However, it is appropriate to consider whether or not the claimant faced additional adversarial conditions during this period, such as would justify applying the GRID going back six months or less.

Some of the claimant's impairments, such as his COPD and his obesity (actually, only overweight) do not produce symptoms sufficient to justify important limitations. As to the claimant's COPD, I would note he continues to smoke a pack of cigarettes per day and has done so for more than 30 years. (Exhibit 4F/l). The claimant has some shortness of breath, but his medical records suggest it is from his heart condition and not from his COPD. (Exhibit 4F/3). Therefore, I did not find this to be an adversarial condition sufficient to justify an application of the GRID rule prior to the day before his 50th birthday.

> Regarding the claimant's weight, the claimant is 5' 11" tall and weighs about 206-208 pounds. (Exhibits 4F/4 and 26F/32). This calculates to a body mass index of 29.0, which meets the criteria of being overweight, but not obese. I considered the effects from this overweight condition when fashioning the above sedentary RFC.
>
> The claimant's weight does not correlate with any specific degree of functional loss. However, in the claimant's case, it may exacerbate the claimant's other severe impairments and may limit the ability to perform routine movements and necessary physical activity within a work environment. His physical consultative examination noted he was in no painful distress, had no difficulty getting on and off the exam table, could heel-toe walk, could squat, and walked with a normal gait. (Exhibit 4F/4). Nevertheless, giving him the benefit of any doubt, I have limited him to the sedentary exertional level.
>
> The claimant's psychological consultative examination with G.A. Jason Simpson, Psy.D. was mostly within normal limits. He has had no counseling or psychotherapy. (Exhibit 19F). The claimant is able to carry out detailed instructions, although not complex instructions. He is able to work in jobs where he has to attend and concentrate for extended periods. He does have some social limitations, but I did not find that those, even with any other listed limitations, were additional adversarial conditions sufficient to justify applying the GRID rule back to the borderline period.
>
> 3. Dr. Kidwai's opinion is discussed above, is res judicata, and is given no weight.

[TR 1111-1112]. Based on the above analysis, ALJ Wheeler did not apply the closely advanced age category for the six months prior to Plaintiff's birthday, finding "[p]rior to the established disability onset date, the claimant was a younger individual age 45-49. On June 16, 2014, the claimant's age category changed to an individual closely approaching advanced age (20 CFR 4040.1563 and 416.963)" [TR 1113]. This resulted in finding that "[t]he claimant was not disabled prior to June 16, 2014, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g))" [TR 1115]. Thus, ALJ Wheeler concluded:

> Based on the application for a period of disability and disability insurance benefits protectively filed on November 20, 2009, the claimant was not disabled under sections 216(i) and 223(d), respectively, of the Social Security Act through December 31, 2013, the date last insured. (Exhibit 15D).

REPORT AND RECOMMENDATION – Page 5

> Based on the application for supplemental security income protectively filed on November 20, 2009, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on June 16, 2014.

[TR 1115]. On May 1, 2019, the Appeals Council granted Plaintiff's request for review and remanded the case back to an ALJ, for reasons unrelated to ALJ Wheeler's borderline age situation analysis [TR 1126-1128].

*October 2019 ALJ Decision*

On September 4, 2019, a fourth and final hearing was held. On October 28, 2019, ALJ Wheeler issued a partially favorable decision again denying Plaintiff's application for DIB but granting Plaintiff's application for SSI [TR 99-1000]. ALJ Wheeler made the following sequential evaluation [TR 988-1000]. At step one, ALJ Wheeler found Plaintiff had not engaged in substantial gainful activity since his alleged onset date [TR 990]. At step two, ALJ Wheeler found that since the alleged onset date that Plaintiff has had the following severe impairments: coronary artery disease with effects from multiple heart attacks, atrial fibrillation, hypertension, obesity, chronic obstructive pulmonary disease, general anxiety disorder, and major depressive disorder [TR 990]. At step three, ALJ Wheeler found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) [TR 991]. At step four, ALJ Wheeler determined Plaintiff has the following RFC, and unlike in his prior decision, he included psychologically-based limitations:

> After careful consideration, I find that since July 5, 2009, the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and less than 10 pounds frequently. He can sit six hours in an eight-hour workday and stand or walk two hours in an eight-hour workday. He has no pushing and pulling restrictions, except for the lifting and carrying restrictions. Mentally, he can understand, remember and carry out simple instructions. He can use appropriate judgment to make simple work related decisions, can maintain attention and concentration to perform simple repetitive tasks, and adapt to

routine changes. He is able to interact appropriately with co-workers and supervisors in a work environment where contact is incidental to the work performed, and he should have no work-related contact with the general public.

[TR 993]. Continuing the step four analysis, ALJ Wheeler determined that Plaintiff is unable to perform any past relevant work, and made the following finding regarding Plaintiff's age classification:

> 7. Prior to the established disability onset date, the claimant was a younger individual (age 45-49). On June 16, 2014, the claimant's age category changed to an individual closely approaching advanced age (age 50-54) (20 CFR 404.1563 and 416.963).
>
> The claimant was born on June 17, 1964. For our purposes, a person reaches a particular age the day before their birthday; therefore, the claimant turned 50 years old on June 16, 2014 (20 CFR 404.102).
>
> ***As established in the prior hearing decision issued on August 3, 2018, the claimant has no significant barriers on his ability to adjust to other work. Therefore, the higher age category will not be applied prior to June 16, 2014*** (HALLEX I-2-2-42).

[TR 997-998 (emphasis added)]. At step five, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, ALJ Wheeler found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as an eye glass packager (DOT Code 713.684-038), semi conductor packager (DOT Code 726.687-030), and print inspector (DOT Code 726.684-050) [TR 998-999]. Based on this determination, ALJ Wheeler concluded Plaintiff "was not disabled prior to June14, 2014, but became disabled on that date and has continued through the date of this decision," and Plaintiff "was not under disability within the meaning of the Social Security Act at any time through March 31, 2013, the date last insured" [TR 999]. Therefore, ALJ Wheeler concluded:

> Based on the application for a period of disability and disability insurance benefits protectively filed on November 20, 2009, the claimant was not disabled under sections 216(i) and 223(d), respectively, of the Social Security Act through March 31, 2013, the date last insured.

> Based on the application for supplemental security income protectively filed on November 20, 2009, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act beginning on June 16, 2014.

[TR 999-1000]. On April 6, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 292-294]. The Appeals Council denied Plaintiff's request on September 5, 2020, making the decision of the ALJ the final decision of the Commissioner [TR 977-982]. On November 3, 2020, Plaintiff filed the instant suit [Dkt. 1]. Plaintiff filed his Opening Brief on July 13, 2021 [Dkt. 16], the Commissioner filed its Brief in Support on September 10, 2021 [Dkt. 17], and on September 20, 2021, Plaintiff filed his Reply Brief [Dkt. 18].

## STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021)) (cleaned up); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). Substantial evidence "need not be a preponderance." *Webster*, 19 F.4th at 718 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).[2]

## ANALYSIS

Plaintiff argues on appeal that the ALJ improperly evaluated his borderline age situation, providing deficient reasoning for not applying the higher age category [Dkt. 16 at 7]. The Commissioner rejoins that because Plaintiff received a partially favorable decision from the ALJ, there is no error [Dkt. 17 at 1]. More specifically, that a borderline age situation only arises if the ALJ finds a claimant not disabled; thus, if the ALJ finds a claimant disabled (even partially), there is no borderline age situation [Dkt. 17 at 6]. And further, that even if the ALJ was required to consider the higher age category, here the ALJ did [Dkt. 17 at 8].

Age is a vocational factor that an ALJ will consider in combination with a claimant's RFC, education, and work experience when determining disability. *See* 20 C.F.R. §§ 404.1563(a), 416.963(a). A claimant is classified in one of three age categories: (1) a younger person (18-49), (2) a person closely approaching advanced age (50-54), or (3) a person of advanced age (55 or older). 20 C.F.R. §§ 404.1563(c)-(e), 416.963(c)-(e). Generally, an individual attains a given age on the day before his birthday. *Id.* § 404.2(c)(4). However, the agency does not apply age categories mechanically if a claimant is within a few days to a few months of reaching an older

---

[2] "As an administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the evidence." *Davis v. Berryhill*, No. 4:17-cv-521, 2018 WL 1536557, at *9 (S.D. Tex. Jan. 3, 2018) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Importantly, however, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Consequently, the Court "is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *SEC v. Chenery*, 332 U.S. 194, 196-97 (1947).

age category and using the older age category would result in a determination or decision that the claimant is disabled. 20 C.F.R. §§ 404.1563(b), 416.963(b). Specifically, the Hearings, Appeals, and Litigation Law Manual ("HALLEX") and the Program Operations Manual Systems ("POMS")[3] both provide that a borderline age situation arises when (1) the claimant's age is within a few days or a few months of the next higher age category, (2) and the higher age category results in a decision of "disabled" instead of "not disabled." HALLEX I–2–2–42(C)(5); POMS DI 25015.006(G). "Agency guidelines provide that 'a few months should mean a period not to exceed six months.'" *Davis*, 2018 WL 1536557, at *9 (citing HALLEX 1-2-2-42). When a borderline age situation exists, the ALJ "must decide whether it is more appropriate to use the claimant's chronological age or the higher age category" and explain in the decision "that he or she considered the borderline age situation, state whether he or she applied the higher age category or the chronological age, and note the specific factor(s) he or she considered." HALLEX I-2-2-43(5). "The classification of a person's age can be important because, in general, the higher the age category, the more lenient the standard for proving a disability." *Manning v. Colvin*, No. 3:13-cv-2178-D, 2014 WL 266417, at *3 (N.D. Tex. Jan. 24, 2014) (citing Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8). Relevant here, both HALLEX and POMS provide that if using the chronological age will result in a favorable decision, the ALJ should not use a higher age category solely because it will result in a more favorable decision. HALLEX I–2–2–42(A); POMS DI 25015.006(A). HALLEX provides: "If using the claimant's chronological age will result in a

---

[3] "While HALLEX does not carry the authority of law, [the Fifth Circuit] has held that 'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.'" *Newton*, 209 F.3d at 459. Additionally, "[w]hile POMS guidelines do not have the force and effect of law, they do have some value, effect, and persuasive force. POMS are not binding on the Commissioner, but they may be viewed as binding on an ALJ in a case that falls squarely within one of the provisions. Generally, a court defers to POMS provisions unless it determines that they are arbitrary, capricious, or contrary to law. Further, when the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *Taylor v. Saul*, No. 4:18-cv-00765-O-BP, 2019 WL 4667515, at *4 (N.D. Tex. Sept. 25, 2019) (citations omitted).

favorable decision, an administrative law judge (ALJ) will not use the higher age category solely because it will result in a more favorable onset date, determination, or decision for the claimant." HALLEX I–2–2–42(A). POMS is even more specific, providing: "If using the claimant's chronological age results in a partially or fully favorable determination, only consider the claimant's chronological age. This is not a borderline age situation." POMS DI 25015.006(A).

Plaintiff applied for both DIB and SSI benefits. The October 2019 Decision found that prior to June 14, 2014, jobs existed in significant numbers in the national economy Plaintiff could perform; and, that beginning on June 14, 2014, the date Plaintiff turned fifty (50) years old, Plaintiff was disabled under the Social Security Act [TR 998-999]. More specifically, the ALJ found that as of June 16, 2014, when Bidwell attained the age of fifty (50) years old, Grid Rule 201.14 directed a finding that Bidwell was "disabled" in consideration of Plaintiff's education level, inability to perform his past relevant work, and RFC for sedentary work involving simple repetitive tasks [TR 999]. The ALJ expressly recognized that Plaintiff's date last insured for purposes of DIB Title II benefits was December 31, 2013 [TR 990]. Therefore, as of the expiration of Plaintiff's Title II date last insured, he was less than six months from his 50th birthday and being presumptively disabled under Grid Rule 201.14. It is undisputed that as a result, the ALJ considered whether the higher age category should be applied to Plaintiff for his DIB claim, ultimately deciding that the higher age category of "closely approaching advanced age" (age 50-54) would not be applied prior to June 16, 2014 [TR 998]. ALJ Wheeler stated the following in support of his conclusion:

> 7. Prior to the established disability onset date, the claimant was a younger individual (age 45-49). On June 16, 2014, the claimant's age category changed to an individual closely approaching advanced age (age 50-54) (20 CFR 404.1563 and 416.963).

REPORT AND RECOMMENDATION – Page 11

> The claimant was born on June 17, 1964. For our purposes, a person reaches a particular age the day before their birthday; therefore, the claimant turned 50 years old on June 16, 2014 (20 CFR 404.102).
>
> ***As established in the prior hearing decision issued on August 3, 2018, the claimant has no significant barriers on his ability to adjust to other work. Therefore, the higher age category will not be applied prior to June 16, 2014*** (HALLEX I-2-2-42).

[TR 998].

Plaintiff argues that the ALJ relied on deficient reasoning in reaching this conclusion, pointing to a distinction between the August 2018 and October 2019 Decision. Specifically, Plaintiff argues that the August 2018 Decision did not consider the effects of any psychologically based limitations and therefore the ALJ cannot rely on his reasoning in his August 2018 Decision to support his October 2019 Decision not to apply the higher age category [Dkt. 16 at 11].

The agency's interpretation of the borderline age regulation dictates that remand is not justified. First, the rule is discretionary. An ALJ is not required to use an older age category. Second, the Commissioner argues, and the Court agrees, that because ALJ Wheeler reached a partially favorable decision—denying his DIB claim but approving his SSI claim—HALLEX and POMS both direct the ALJ to follow the claimants age classification and not apply the borderline age classification analysis to reach a more favorable result. HALLEX I–2–2–42(A); POMS DI 25015.006(A). To be clear, ALJ Wheeler issued a "partially favorable" decision, granting Plaintiff SSI benefits; if he had applied the higher age category it would have resulted in a more favorable decision for Plaintiff. Plaintiff also would have received DIB benefits. Plaintiff argues his is not the situation outlined by HALLEX and POMS because his claim for DIB was wholly denied, thus he was not issued a partially favorable decision as to his DIB claim [Dkt. 18 at 1-2]. But the few courts that have interpreted this issue have found the circumstances presented by Plaintiff's case are exactly the situation HALLEX and POMS discuss. *Cleveland v. Saul* presents a factually

REPORT AND RECOMMENDATION – Page 12

similar scenario that the Court finds persuasive. CV-18-143, 2020 WL 1494075 (D. Mont. Mar. 27, 2020). In *Cleveland*, the ALJ found that prior to the claimant's 50th birthday there were jobs that existed in significant numbers in the national economy that the claimant could perform; thus, he was not disabled. However, when the claimant turned 50 the ALJ determined that a finding of disability was warranted by application of the Grids. *Id*. at *6. The claimant's date last insured fell shortly before his 50th birthday, like Plaintiff here. *Id*. Because the claimant was not found disabled until his 50th birthday he did not qualify for DIB but did qualify for SSI. This resulted in a "partially favorable decision" by the ALJ. *Id*. Based upon these facts, the Court found the borderline age rule inapplicable opining that "Plaintiff does not seek the benefit of the borderline age rule to avoid a complete denial of benefits, but rather to receive a more favorable onset date and expand the amount of retroactive benefits he would receive. This is not a proper use of the borderline age rule." *Id*. Other courts have reached this same result. *See Teresa G.S. v. Comm'r Soc. Sec.*, No. 19-cv-583, 2020 WL 230706, at *6 (S.D. Ill. Jan. 15, 2020) (citing HALLEX I-2-2-42) (where Plaintiff had been awarded SSI benefits but not DIB benefits based off her age classification, ALJ was not required to evaluate borderline age because "Plaintiff is simply asking for a more favorable onset date, and that alone is not enough."); *see also Wells v. Colvin*, No. 2:15-cv-64, 2016 WL 5390935, at *3-5 (N.D. Mo. Sept. 27, 2016) (declining to extend the borderline age rule where the ALJ issued a partially favorable decision finding the plaintiff retained some capacity to work, and was therefore not disabled until she attained the age of 55, at which time the Grids directed a finding of disabled. The court concluded the borderline age rule did not apply because the plaintiff was not seeking to use it "to avoid a complete denial of benefits, but instead to permit her to have a more favorable onset date and expand the number of months for which she can receive retroactive benefits.").

Like in *Cleveland*, Plaintiff is asking for a more favorable onset date that would allow him to collect retroactive benefits [Dkt. 16 at 14 ("Had the ALJ conducted a proper evaluation of the vocation adversities in this case, he may have found that Bidwell deserved the benefit of an older age category on or prior to December 13, 2013, which would have led to a determination he was entitled to Title II DIB.")]. This is not a case of complete denial of benefits—Plaintiff did receive SSI benefits. As such, because Plaintiff received a partially favorable decision, there is no borderline age error. *Berg v. Berryhill*, No. 17-04452, 2019 WL 3387209, *5 (E.D. Pa. July 26, 2019) ("[B]ecause Berg's age at the time of adjudication resulted in her receiving benefits under the Grids, the borderline age rules do not apply to her case."); *Antal v. Berryhill*, No. 3:17-cv-2097, 2018 WL 4038147, *5 (M.D. Penn. July 26, 2018) (finding the borderline age rule should not be extended to "cases in which reliance upon the claimant's chronological age has led to a partially favorable outcome since: 'This is not a borderline age situation.'"); *Lefebre v. Berryhill*, No. 17-C-1312, 2018 WL 4676156, *6 (E.D. Wis. Sept. 28, 2018) (finding ALJ did not err in treating the plaintiff as a younger person prior to his 50th birthday, which resulted in a denial of DIB but approval of SSI, because the borderline age rule "does not say that the ALJ must place a claimant in a higher age category because he will benefit from it."). Plaintiff offers no authority directing a contrary result.

The Commissioner alternatively argues that even if a borderline age error exists, the ALJ has sufficiently addressed the issue. When a borderline age issue is present, the ALJ, while not required to use, is required to consider the older age category. *Schofield v. Saul*, 950 F.3d 315, 320 (5th Cir. 2020) (finding that the ALJ has "no discretion to ignore" the command to consider borderline age situations). The ALJ must provide enough of an explanation that the court may assess whether the decision is supported by substantial evidence. *Id*. However, again, "the Social

Security Administration has considerable discretion as to whether it should advance a claimant to the next age group or decide his case based on his chronological age." *McGowan v. Comm'r, Soc. Sec.*, No. 3:19-cv-44, 2019 WL 6794208, at *3 (S.D. Miss. Nov. 22, 2019) (quoting *Nance v. Comm'r*, No. 16-cv-69, 2017 WL 590300, at *3 (N.D. Miss. Feb. 14, 2017)), *report and recommendation adopted*, No. 3:19-cv-44, 2019 WL 6794198 (S.D. Miss. Dec. 12, 2019). ALJ Wheeler has provided enough of an explanation. Revisiting Plaintiff's argument regarding the alleged deficiency of the ALJ's explanation, though the August 2018 and October 2019 decision differ in the inclusion of psychological limitations in the RFC, ALJ Wheeler did in fact consider Plaintiff's psychological limitations in his August 2018 evaluation of the borderline age situation as follows:

> The claimant's psychological consultative examination with G.A. Jason Simpson, Psy.D. was mostly within normal limits. He has had no counseling or psychotherapy. (Exhibit 19F). The claimant is able to carry out detailed instructions, although not complex instructions. He is able to work in jobs where he has to attend and concentrate for extended periods. He does have some social limitations, but I did not find that those, even with any other listed limitations, were additional adversarial conditions sufficient to justify applying the GRID rule back to the borderline period.

[TR 1112]. In his August 2018 discussion, which ALJ Wheeler incorporated into his October 2019 Decision, he considered and evaluated the overall impact of all the factors present in Plaintiff's case and determined that it was appropriate to follow Plaintiff's chronological age. The regulations require nothing more. 20 CFR §§ 404.1563(b), 416.963 (b); *see also McGowan*, 2019 WL 6794208, at *4 ("Because the ALJ explicitly acknowledged the borderline age situation, found that the 'limited adverse impact of all factors on the claimant's ability to adjust to other work' did not warrant use of the higher age category, and relied on the VE's testimony in determining McGowan could perform other work, the undersigned finds that remand is not warranted on this issue."); *see also Trevino v. Berryhill*, No. 7:16-cv-684, 2018 WL 1629211, at *11 (S.D. Tex.

Mar. 16, 2018) (finding that the ALJ did not "mechanically" apply the age category based solely on the Grid Rules, rather because the ALJ relied on the VE testimony in finding claimant was not disabled, he based this determination on all of the vocational factors including her age), *report and recommendation adopted*, No. M-16-684, 2018 WL 1626365 (S.D. Tex. Apr. 4, 2018).  The Commissioner's decision should be affirmed.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 31st day of August, 2022.**

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE